UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD SCHWENSOW,                              No.08-12241

    Plaintiff,                                District Judge Avern Cohn

v.                                             Magistrate Judge R. Steven Whalen

UNITED STATES OF AMERICA,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

On May 22, 2008, Plaintiff, an inmate in the custody of the Federal Bureau of Prisons, filed a *pro se* civil complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b) and 2671-2680, arising out of a "slip and fall" at the Federal Correctional Institution ("FCI") at Milan, Michigan. Before the Court is Defendant United States of America's May 22, 2009 *Motion for Summary Judgment* [Docket #17] which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing the case WITH PREJUDICE.

**I. BACKGROUND FACTS**

Plaintiff, housed at FCI Milan, Unit B-2 at the time of the alleged August 27, 2006, 2:40 p.m. incident, claims that he slipped and fell down a flight of stairs while on his way to the recreation yard. *Complaint* at ¶8. He alleges that as a result, he sustained permanent injury to his left arm and shoulder. *Id.* Plaintiff, noting that "B-2 Unit Correctional Officer[s] failed to close the two windows overlooking the stair landing" during a rainstorm occurring a few minutes earlier, attributes his slip to standing rainwater on the already

-1-

"highly waxed and buffed" floor surface. *Id.* Plaintiff alleges negligence by several acts and omissions of the B-2 corrections officers, claiming officers 1) should have closed the windows during the rainstorm 2) "failed to check the stairwell before allowing Plaintiff to use the stairs" 3), failed to warn him of the standing water by posting signs despite the fact that they used the same set of stairs just moments earlier, and 4) failed to direct orderlies to mop up the wet landing. *Id.* He seeks monetary damages of 3 million dollars for "physical and psychological injury," and "pain, suffering, and physical disability." *Id.* at ¶11.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III. ANALYSIS

Defendant contends that summary judgment is appropriate on two grounds. First, Defendant argues that the standing water was an "open and obvious" danger and second, that FCI-Milan staff did not have "actual or constructive notice of the water prior to the slip-and-fall." *Defendant's Brief* at 1-2, *Docket #17*.

"[T]he United States government may not be sued without its consent." *Montez ex rel. Estate of Hearlson v. U.S.,* 359 F.3d 392, 395 (6th Cir. 2004);*United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)("the United States can be sued only to the extent that it has waived its immunity"). "Pursuant to the FTCA, the United States has consented, subject to certain exceptions, to suit for damages for personal injuries caused by the negligence of government employees acting within the course and scope of their employment." *Id.* (*citing* 28 U.S.C. §§ 1346(b), 2671-2680). Claims for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," are to be determined

-3-

"in accordance with the law of the place where the act or omission occurred." § 1346(b)(1). As such, Michigan law applies to this matter. *Brown v. U.S.,* 583 F.3d 916, 920 (6th Cir. 2009).

"Under Michigan law a plaintiff alleging a claim of negligence must demonstrate the following four elements: 1) a duty owed to the plaintiff by the defendant, 2) breach of that duty, 3) causation, and 4) damages. *Id.* (*citing Case v. Consumers Power Co.,* 463 Mich. 1, 6, 615 N.W.2d 17, 20 (2000)). Defendant acknowledges that "because it appears that there is a special relationship between a federal prisoner and the prison under which the prisoner has involuntarily entrusted himself to the control and protection of the prison, under Michigan law a prisoner should be treated like an invitee for purposes of a premises liability claim." *Defendant's Brief* at 6. "With regard to the duty element, the general rule is that a premises possessor 'owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land.'" *Lawrence v. U.S.*, — F. Supp. 2d —, 2010 WL 148660, *3 (E.D.Mich. 2010)(Ludington, J.)(*citing Lugo v. Ameritech Corp.*, 464 Mich. 512, 516, 629 N.W.2d 384 (2001)). "Questions concerning the duty element of a negligence action are for the court to decide as a matter of law." *Id.* (*citing Scott v. Harper Recreation, Inc.,* 444 Mich. 441, 448, 506 N.W.2d 857 (1993).

### A. Open and Obvious

Defendant, citing *Riddle v. McLouth Steel Products Corp.,* 440 Mich. 85, 96 fn 10, 485 N.W.2d 676 (1992), argues that "'[w]here dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge

of it on behalf of the invitee.'" *Defendant's Brief* at 4, 6. "To determine if a danger is open and obvious, the relevant inquiry is whether 'an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection.'" *Wasaya v. United Artist Theatre Circuit, Inc.*, 205 F.Supp.2d 756, 759 (E.D.Mich. 2002)(Gadola, J.)(*citing Novotney v. Burger King Corp.*, 198 Mich.App. 470, 499 N.W.2d 379, 381 (1993)). In determining "whether a condition is 'open and obvious,' or whether there are 'special aspects' that render even an 'open and obvious' condition 'unreasonably dangerous,' the fact-finder must utilize an objective standard, *i.e.*, a reasonably prudent person standard." *Lawrence, supra,* at *4 (*citing Lugo* at 517, 629 N.W.2d 384). However, standing water, by itself, does not constitute an unreasonable danger. *Luzier v. Sears Roebuck & Co.* 2009 WL 2960630, *6 (E.D.Mich.2009)(Rosen, J.)(*citing Lugo,* 629 N.W.2d at 387-88).

However, given the facts available to the Court, I am nonetheless reluctant to find that the standing water was an "open and obvious" danger. Defendant argues that Plaintiff's admission that his clothes were saturated with rainwater defeats his claim that the standing water was indiscernible. In contrast, Plaintiff alleges that the floor was "highly waxed and buffed" at the time of his slip and fall, apparently causing him to mistake the water's shine for wax polish. *Complaint* at ¶8. *See Bialick v. Megan Mary, Inc.*, — Mich. App. —, — N.W. 2d —, 2009 WL 4281460 (Mich.App. December 1, 2009):

> "[A] genuine issue of material fact exists with respect to whether the wet condition of defendant's floor was open and obvious. Plaintiff was several steps inside the gas station when she slipped and fell on the wet tile floor. Denha admitted that there was no standing water, but the floor was wet. Plaintiff observed no caution signs posted on the premises regarding a wet or slippery floor. Further, while Denha testified that there was a long mat on the floor all the way to the cashier counter, plaintiff testified that there were no mats. Plaintiff was specifically looking down at the floor while walking, and she did not see water or any other hazard on the floor before she fell."

Likewise here, "[i]f reasonable minds could differ as to whether a risk is open and obvious, 'the obviousness of risk must be determined by the jury.'" *Wasaya* at 759 (*citing Glittenberg v. Doughboy Recreational Industries*, 441 Mich. 379, 491 N.W.2d 208, 217 (1992)*; Vella v. Hyatt Corp.*, 166 F.Supp.2d 1193, 1198 (E.D.Mich.2001)).

### B. Actual and Constructive Notice

In contrast, I agree with Defendant's contention that BOP staff members did not have actual or constructive notice of the water on the landing prior to Plaintiff's accident. *Defendant's Brief* at 9-12. An invitor "is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused . . . . [h]as existed a sufficient length of time that he should have had knowledge of it." *Serinto v. Borman Food Stores,* 380 Mich. 637, 640-641, 158 N.W.2d 485, 486 (Mich. 1968). Consistent with the Complaint's version of events, the water would have been present for only an hour or less before the accident.

First, Plaintiff cannot prove that Defendant created the danger by either leaving the window open or otherwise creating the water hazard. *Pete v. Iron County,* 192 Mich.App. 687, 689-690, 481 N.W .2d 731, 732 - 733 (Mich.App.1991). Significantly, although meteorological records from the day in question show light rainfall at *some* regional reporting stations, Plaintiff's deposition testimony that the recreational yard was closed for "thunder and lightning" then reopened at 2:30 p.m. (*Docket #18-3,* pg. 10, lns. 15-22) stands at odds with records showing the absence of any "thunderstorm" activity in the area. *Docket #18-12,* pg. 4 of 22. BOP Recreation Specialist E. L. McGoy, noting that yard closings for inclement weather are routinely logged, states that the log shows that on August 27, 2006, the yard remained open from 10:30 a.m. to 3:30 p.m. *Affidavit of E.L. McGoy, Docket #18-10* at ¶5.

Although Plaintiff theorizes that the rainwater came through the west-facing windows adjacent to the landing, meteorological reports for the afternoon of August 27 show only *northerly* wind speeds of less than five miles an hour. *Docket #18-12,* pg. 3 of 22. Further, even assuming the truth of Plaintiff's dubious claim that he slipped in "rainwater," he would be hard-pressed to show that Defendant was responsible for leaving the windows open. Corrections Officer Paul Durkee (on duty on the day in question) states that prisoners were permitted to open and close the windows adjacent to the landing. *Affidavit of Paul Durkee, Docket #18-8* at ¶8. Durkee also states that he routinely scouted the area for dropped ice (taken from an ice machine in the recreation area) onto the stairway or landing, noting that inmates commonly dropped ice going to and from the yard. *Id.* at ¶¶6-7.

Second, Plaintiff cannot show that Defendant had either constructive or actual knowledge of the water problem. In an attempt to establish that Defendant was aware of the standing water or at a minimum, slippery surface, Plaintiff has submitted an affidavit by a purported witness who states that he observed an BOP officer descend the stairs just prior to the slip and fall. *Response,* Exhibit A, *Affidavit of Derrick Jackson* at ¶4. BOP prisoner Jackson also states that after witnessing the accident, he "then realized that the windows over the stairwell were wide open and that rainwater had entered those open windows during the recent rain showers." *Id.* at ¶6.

However, Jackson's statement that a corrections officer had knowledge of the rainwater just prior to letting the prisoners into the reopened recreation yard is defeated by irrefutable evidence that 1) he could not have observed "rainwater" on the landing and 2) prisoners would not have been descending the stairs for the nonexistent "reopening" of the

recreation yard following a nonexistent "thunderstorm."[1]

Leaving the discredited "rainwater" and "thunderstorm" allegations aside, Plaintiff's claim that Defendant had constructive or actual knowledge of water (albeit from some other source) on the landing is undermined by his own admission that he used the stairwell at least three times earlier the same day without observing standing water. *Docket #18,* Exhibit 1, *Ronald Schwensow Deposition,* pgs. 12-13. Further Jackson's claim that he saw a BOP officer descend the stairs just before the alleged accident (implying that the officer had actual knowledge of the danger but failed to use reasonable care by warning the prisoners) is undermined by Paul Durkee's statement that while prisoner injuries were routinely logged, his August 27, 2006 log contains "no indication that *any* inmate reported falling down the stairs" or otherwise sustained an injury. *Docket #18-8,* at ¶4 (emphasis added); *Id.,* Attachment A. Durkee also notes Plaintiff's claim that he sustained an immediately apparent injury but did not report it to a corrections officer is also dampened (no pun intended) by Durkee's observation that as a rule, injured prisoners "immediately report the accident or occurrence to staff to avoid being accused of being involved in a physical altercation" which would result in "placement in the special housing unit." *Id.* at ¶10.

Under the facts of this case, no rational trier of fact could find in Plaintiff's favor. Therefore, summary judgment is appropriate. In closing, I note further that even assuming the presence of water on the landing and that Durkee walked by the "danger" en route to the recreation yard, Plaintiff's vigorous argument, discussed *supra,* that the substance was not "open and obvious" supports the conclusion that the officer would not have observed the

---

[1] Defendant also contends that Jackson should be struck as a witness, noting that Jackson was not named until after the close of discovery, preventing Defendant from deposing him. *Reply,* at 5. Because Jackson's claims that Plaintiff slipped on "rainwater" are easily discredited, the Court need not consider this argument.

substance as he proceeded Plaintiff down the stairway. As such, because it cannot be shown that Defendant breached its duty to take reasonable care in protecting Plaintiff from injury, the present claim should be dismissed.

## IV. CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment [Docket #17] be GRANTED, dismissing the case WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within

the objections.

                                         S/R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

Dated: February 16, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 16, 2010.

                                           S/Gina Wilson
                                           Judicial Assistant